NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. GUERRA, JR., | Civil Action No.: 2:17-cv-6497 |
| Plaintiff, | |
| v. | OPINION |
| CONSOLIDATED RAIL CORPORATION (CONRAIL), | |
| Defendant. | |

**CECCHI, District Judge.**

# I. INTRODUCTION

This matter comes before the Court on the Motion of Consolidated Rail Corporation ("Defendant") to Dismiss Plaintiff John F. Guerra, Jr.'s ("Plaintiff") Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 4). The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow, Defendant's Motion to Dismiss is granted.

# II. BACKGROUND

Defendant "provide[s] railroad transportation between several . . . states," and Plaintiff is a "qualified conductor/brakeman who works [for Defendant.]" (ECF No. 1 ¶¶ 6, 8).

While Plaintiff claims to have "strictly abided by the appropriate rules and regulations . . . promulgated by the Federal Railroad Administration" during his employment, he notes that Defendant "emphasize[d] productivity over rules compliance." (*Id.* ¶¶ 9-10). For instance, "[i]n the fall of 2015, various railroad supervisors urged Plaintiff . . . to follow the rules less stringently

...." (*Id.* ¶ 11). When Plaintiff, however, "continued to perform his work with strict obedience to ... rules and regulations, [Defendant] penalized Plaintiff ... [by] subject[ing Plaintiff] to intense observations, reductions in lunch periods, refusal of his requests to use Jitneys, and threats." (*Id.* ¶¶ 12-13).

Plaintiff first alerted Defendant's internal investigation office about this alleged retaliatory behavior on October 6, 2015, and his complaints were confirmed as received on October 8, 2015. (*Id.* ¶¶ 14-15). On November 20, 2015, Plaintiff was informed that no action was being taken in response to Plaintiff's complaints. (*Id.* ¶ 17).

Subsequently, Plaintiff contends that "several [Defendant] supervisors ... spoke to the Plaintiff and informed him that they were aware of the complaints made against [Defendant] supervisors, that he should stop making complaints, and that he should simply follow rules and instructions regardless of whether he agrees with them or believes that they may violate ... rules, regulations, and policies." (*Id.* ¶ 18). Plaintiff further states that he was told that if he failed to listen to Defendant supervisors, he should "be prepared for undesirable consequences," such as not being promoted and facing severe disciplinary action. (*Id.* ¶¶ 19-20).

Throughout February and March 2016, Plaintiff made several informal complaints addressing "defective brakes and braking systems." (*Id.* ¶ 22). Following this, Plaintiff claims that Defendant supervisors again told him that "his failure to cooperate with management would have unpleasant consequences to him." (*Id.* ¶ 24).

On March 7, 2016, "while operating the locomotives about which he previously complained as having defective brakes, Plaintiff's train failed to properly stop[,] causing him to run through a railroad switch." (*Id.* ¶ 25). This incident triggered an investigation and disciplinary hearing against Plaintiff, which resulted in a 45 day suspension of Plaintiff beginning on April 6,

2016. (*Id.* ¶¶ 26-30). Plaintiff alleges that he was told prior to his suspension that he had been warned "that this would be the consequence[] if he continued to strictly follow the rules, file written complaints concerning equipment, and generally fail[] to cooperate with management's goal of increased productivity," and that the suspension was meant to be a "lesson." (*Id.* ¶ 29).

Plaintiff notes that "reporting defective and unsafe railroad equipment that violate[s] federal law, rule or regulation relating to railroad safety" is a protected activity. (*Id.* ¶¶ 31-33). Plaintiff argues that Defendant's alleged retaliatory actions against Plaintiff for executing protected activities violated Plaintiff's rights under the Federal Railroad Safety Act ("FRSA"). (*Id.* ¶ 34). Accordingly, Plaintiff contends that on May 10, 2016, Plaintiff filed a FRSA complaint with the Secretary of Labor's Region II Occupational Safety and Health Administration ("OSHA") Whistleblower Office via first-class U.S. mail. (*Id.* ¶¶ 35-36). "This was filed within 180 days from the date the [P]laintiff became aware of the [D]efendant railroad's intent to take adverse or unfavorable action against him." (*Id.* ¶ 35). Plaintiff states that on March 7, 2017, however, OSHA dismissed the administrative complaint as having been untimely filed. (*Id.* ¶ 36). On March 27, 2017, Plaintiff filed objections and a request for a hearing before an administrative law judge ("ALJ"). (*Id.* ¶ 37). An ALJ upheld OSHA's decision to dismiss Plaintiff's administrative complaint as untimely on August 18, 2017. (*Id.* ¶ 38). Following this, on August 23, 2017, Plaintiff filed a petition for review challenging the ALJ's decision with the Department of Labor's Administrative Review Board ("ARB"). (*Id.* ¶ 39).

Plaintiff contends that he has "exhausted all administrative remedies as required by statute and/or common law," and thus he brings the current action in this Court. (*Id.* ¶¶ 41-43).

### III. **LEGAL STANDARD**

Courts must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if

3

the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). For facial attacks, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations . . . [and] the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

## IV. DISCUSSION

Defendant asserts that Plaintiff's Complaint should be dismissed because the Court lacks subject matter jurisdiction over Plaintiff's FRSA claim due to the untimely filing of Plaintiff's administrative complaint. (ECF No. 4-3 at 2).

"An employee who alleges discharge, discipline, or other discrimination in violation of [the FRSA] may seek relief . . . to be initiated by filing a complaint with the Secretary of Labor." 49 U.S.C. § 201099(d). The FRSA also allows for de novo review by federal district courts and for appellate review of a final order of the Secretary of Labor by federal courts of appeals. 49 U.S.C. § 20109(d) (3)-(4).

4

"The Department of Labor has promulgated federal regulations to govern the adjudication of FRSA claims. . . ." *Glista v. Norfolk S. Ry. Co.*, No. 13-04668, 2014 WL 1123374, at *1 (E.D. Pa. Mar. 21, 2014). First,

> [w]ithin 180 days after an alleged violation of . . . [the] FRSA occurs, any employee who believes that he or she has been retaliated against in violation . . . may file, or have filed by any person on the employee's behalf, a complaint alleging such retaliation [to OSHA]. The date of the postmark, facsimile transmittal, electronic communication transmittal, telephone call, hand-delivery, delivery to a third-party commercial carrier, or in-person filing at an OSHA office will be considered the date of filing.

29 C.F.R. § 1982.103. Following the timely filing of an OSHA complaint,

> the regulations state that any party may appeal OSHA's findings to an ALJ and then may appeal decisions by an ALJ to the Department of Labor's ARB. The decision of an ALJ becomes a final order of the Secretary of Labor unless a petition for review is filed with and accepted by the ARB within 30 days. Either appealing to the ARB or filing for de novo review in a federal district court after the passage of 210 days without a final decision effectively prevents an ALJ's order or OSHA's preliminary findings from becoming a final order of the Secretary.

*See Glista*, 2014 WL 1123374 at *1 (internal citations omitted); *see also* 29 C.F.R. § 1982; *see also* 49 U.S.C. § 20109.

An employee's failure to timely file an administrative complaint for an alleged grievance precludes that employee from later recovering from said grievance. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-11 (2002) ("A party [] must file a charge within [the statutorily prescribed time period from] the date of the act or lose the ability to recover for it.").

Defendant states, and Plaintiff agrees, that "failure to timely file an OSHA complaint will divest this Court of subject-matter jurisdiction." (ECF Nos. 8 at 11, 9 at 1). Defendant and Plaintiff contest, however, the timing of Plaintiff's filing.

"In the Third Circuit, a plaintiff can satisfy [his or] her burden of proving timely delivery either with direct evidence of receipt, or through use of the common-law mailbox rule." *Hall-Ditchfield v. I.R.S.*, No. 07-1290, 2009 WL 1606875, at *2 (E.D. Pa. June 9, 2009), *aff'd sub nom.*

*Ditchfield v. United States*, 366 F. App'x 391 (3d Cir. 2010). "Under the mailbox rule, if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) (internal quotations omitted). When a party seeks to invoke the mailbox rule's presumption of receipt, that party bears the initial burden of proving that the disputed filing was mailed. *See id.* at 320. There is a "weak[] presumption [that a filing was mailed] . . . where delivery is sent via regular mail, for which no receipt, or other proof of delivery, is generated." *See id.* at 319 (internal citations omitted). Without concrete proof of delivery, "receipt can be proven circumstantially by introducing evidence of business practices or office customs pertaining to mail . . . in the form of a sworn statement." *See id.* (internal citations omitted). Courts have held, however, that such evidence must go beyond a sender's self-serving testimony. *See id.* at 320 ("Given [one party's] denial [of receipt], and the ease with which a letter can be certified, tracked, or proof of receipt obtained, [the] weak rebuttable presumption [from a self-serving affidavit] is not sufficient to establish receipt as a matter of law."); *see also Hall-Ditchfield v. I.R.S.*, 2009 WL 1606875 at *4 (noting that plaintiff did not satisfy her burden of proving timely delivery via the mailbox rule when plaintiff solely provided evidence that "fail[ed] to go beyond the plaintiff's own testimony").

Here, "the statutory 180 day period for filing Plaintiff's administrative complaint expired on October 3, 2016." (ECF No. 4-3 at 8). Defendant claims that Plaintiff's FRSA complaint was not filed until November 28, 2016, when OSHA acknowledged that it was filed. (*Id.* at 1). Plaintiff, however, contests that his FRSA complaint was filed according to the mailbox rule when it was sent via regular mail on May 10, 2016. (ECF Nos. 4-3 at 8, 8 at 2). As evidence that the FRSA complaint was mailed on May 10, 2016, Plaintiff provides affidavits from his attorney,

6

which state that the complaint was timely mailed by an unidentified person. (ECF No. 8-2). Plaintiff additionally provides "detailed procedures followed by Plaintiff's counsel['s] office when handling an FRSA case and filing the OSHA FRSA complaint," in which Plaintiff describes how the filing of pleadings "would" normally be handled "if" a complaint was transmitted. (ECF No. 8 at 14-16). Plaintiff notes that a complaint is normally "sent by both certified mail and Fax." (*Id.*).

Although Plaintiff refers to service by an unnamed person who would have mailed Plaintiff's administrative complaint, there is no affidavit from the person who is alleged to have mailed the administrative complaint. (ECF Nos. 8 at 4-7, 8-2 Exhibits B, C, D). Moreover, Plaintiff acknowledges that typical office procedures were not followed "due to counsel's assistant's oversight," as the administrative complaint is alleged to only have been sent via regular mail, not by certified mail and fax. ECF No. 8 at 13; *see generally Woodward v. Pressler & Pressler, LLP*, No. 10-1325, 2014 WL 809003, at *9 (D.N.J. Feb. 28, 2014) ("[P]roof that the regular office practice was not followed or was carelessly executed [makes] the presumption that notice was mailed [] unreasonable."). Plaintiff provides no other corroborating evidence sufficient to invoke the mailbox rule. As such, the Court finds that it does not have subject matter jurisdiction over this matter, and the Court will dismiss Plaintiff's Complaint.[1]

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted. To the extent that the pleading deficiencies identified by this Court can be cured by way of amendment, Plaintiff is

---

[1] The Court need not address Defendant's alternative argument for summary judgment pursuant to Fed. R. Civ. P. 56.

hereby granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: June 12, 2018

                                                  **CLAIRE C. CECCHI, U.S.D.J.**